UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR ADVERTISING OF
MICHIGAN, INC.,

        **Plaintiff,**                              **Case No. 09-14218**

**v.**                                          **Honorable Denise Page Hood**

CITY OF UTICA,

        **Defendant.**

_____/

## AMENDED ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant City of Utica's Motion for Summary Judgment [Docket No. 9, filed on May 18, 2010]. On June 8, 2010, Plaintiff filed a Response to Defendant's Motion for Summary Judgment [Docket No. 14], to which Defendant filed a Reply [Docket No. 15, filed on June 14, 2010].

This matter is also before the Court on Plaintiff's Motion for Summary Judgment, filed on May 24, 2010 [Docket No. 11]. Defendant filed a Response to Plaintiff's Motion for Summary Judgment on June 14, 2010 [Docket No. 16], to which Plaintiff filed a Reply [Docket No. 17, filed on June 25, 2010]. On January 12, 2011, Plaintiff filed a Submission of Supplemental Authority [Docket No. 18], to which Defendant filed a Reply to Plaintiff's Submission of Supplemental Authority [Docket No. 19, filed on January 19, 2010].

## II. FACTUAL BACKGROUND

At issue in this case is the constitutionality of various provisions of the City of Utica's

regulatory scheme concerning "nonaccessory signs," otherwise known as billboards.

In 1992, the City of Utica enacted the zoning ordinance at issue, which regulates

billboards and other signs.  The ordinance defines a nonaccessory sign as "[a] sign that is not

accessory to the main or principal use of the premises."  Section 1500 of the zoning ordinance

states, in part, that "the purpose of this section and the subsections thereunder is to permit such

signs and visual outdoor advertising as will not, by reason of their size, location, or manner of

display, endanger public health and/or safety…."  Before its amendment in 2008, the 1992

ordinance imposed the following restrictions on the placement and physical dimensions of

billboards:

> Section 1507. Nonaccessory signs (billboards).
> 1. Nonaccessory signs not exceeding 250 square feet in area shall be permitted
> only on [sic] the I and C-2 districts provided such signs shall not be less than 100
> feet from any residential district and provided further that at least 500 feet shall be
> provided between signs.

Utica, Mich., Zoning Ordinance, § 1507 (1992).

In 2008, CBS Outdoor, a competitor to Plaintiff, proposed to the City of Utica that CBS

Outdoor be allowed to lease city property to erect a billboard that did not comply with the

requirements of Section 1507.  Utica subsequently directed its zoning consultant, John Ambrose,

to propose an amendment to 1507.  Ambrose then wrote a letter to the Utica Planning

Commission and City Council with proposed language for the amendment:

> Pursuant to the discussion between the City Council and a Mr. Thomas Bugay of
> CBS Outdoor at an extensive meeting of the City Council held on May 13, 2008,
> concerning the placement of a digital billboard sign on City property, John
> Ambrose & Company, Inc. is pleased to submit the following proposed zoning
> amendment to Section 1507 that would allow such a sign without rezoning
> property or the granting of any required variances.  The following proposed
> language would be added to existing language which reads as follows (the
> proposed language is printed in ***"bold italic".*** [sic]

> Section 1507.  Nonaccessory signs (billboards).
>> 1. Nonaccessory signs not exceeding 250 square feet in area shall be permitted only in the I and C-2 districts provided such signs shall not be less than 100 feet from any residential district and provided further that at least 500 feet shall be provided between signs. ***The Planning Commission, however, may waive location and sign area requirements when said nonaccessory signs (billboards) are located on City owned property.***

Ex. E to Pl.'s Mot. for Summ. J., May 14, 2008, Letter from John Ambrose & Co., Inc.  The City Council accepted the proposed amendment, and unanimously approved the lease of city property to CBS Outdoor for installation of a billboard.  *Id.*

After noticing CBS Outdoor's new billboard, Plaintiff Lamar Advertising ("Lamar") leased private property, zoned C-2, in the vicinity of the CBS billboard in order to erect a billboard of its own.  After submitting a site plan for its proposed billboard, planning consultant Ambrose recommended denial of the plan because the proposed billboard had an area of 672 square feet, well in excess of the 250 square foot limit in Section 1507, but equal in size to the CBS Outdoor billboard.  Ambrose noted that the plan showed the proposed billboard was set back only one foot from the property line, rather than the three feet required by the ordinance, and that the proposed site was only 90 feet away from a single-family residential district in spite of the 100 foot distance required by the ordinance.  Ex. C to Def.'s Mot. for Summ. J.  The Planning Commission accepted Ambrose's recommendation and denied Plaintiff's site plan.

In August 2009, Plaintiff submitted an application for a building permit for another billboard on Van Dyke Road on private property.  The size of the proposed billboard was also in excess of the zoning requirements.  Utica's building inspector orally denied Plaintiff's application, finding that the plans were illegible and not sufficiently complete to proceed to the Planning Commission.  Dep. of Edward Durbin, Ex. I to Pl.'s Mot. for Summ. J.

In October 2009, Plaintiff filed this lawsuit challenging the zoning ordinance on two grounds, (1) "deprivation of civil rights as a result of the zoning ordinance's unconstitutional restrictions on commercial and noncommercial speech" and (2) "deprivation of civil rights as a result of Utica's unconstitutional prior restraint on billboards." Pl.'s Mot. for Summ. J. at 7. Both parties filed motions for summary judgment.

## III. DISCUSSION

### A. Standard of Review

Summary Judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). "If, on the other hand, a reasonable jury could return a verdict for the non-moving party, summary judgment is inappropriate." *Pagan v. Fruchey*, 492 F.3d 766, 779 (6th Cir. 2007) (internal citation omitted). The moving party bears the burden of establishing the lack of any genuine issue of material fact, and any inferences should be made in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Ripeness

As a preliminary matter, the City of Utica contends that Lamar did not exhaust all of its administrative remedies with regards to its application for the Van Dyke site proposal. After the building inspector denied Plaintiff's application, Plaintiff did not correct the deficiencies in the application and reapply. Because of this failure to continue with the application process, Utica argues that all claims relating to the site proposal for the Van Dyke location should be dismissed.

There is no requirement that, in order to challenge the validity of a law restricting free speech, one must receive a final administrative decision. This Court has previously held that administrative finality is not required where protected speech is restricted. In *Lamar Adver. Co. v. Twp. of Elmira*, this Court rejected the defendant's argument that the plaintiff's First Amendment challenge to a law restricting speech was not ripe for review due to a lack of final administrative review. 328 F. Supp. 2d 725, 735 (E.D. Mich. 2004). This Court explained that "[b]ecause [the defendant] has restrained Lamar's exercise of its free speech rights, judicial intervention is favored, even absent final administrative resolution." *Id*. Utica's reliance on non-controlling state case law does not persuade this Court otherwise.[1]

This Court also notes that Lamar is challenging the validity of Utica's zoning ordinance on its face, removing the need for any administrative decision. In *City of Lakewood v. Plain Dealer Pub. Co.*, the Supreme Court held that "when a licensing scheme allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied a license." 486 U.S. 750, 755-56 (1988). The parties do not dispute that Lamar has been subject to the ordinance that it is challenging, and that it is challenging the degree of discretion the zoning scheme vests in Utica officials.

Even assuming, *arguendo*, that Lamar's challenge to the ordinance with respect to the Van Dyke Proposal is not ripe for review, Utica does not appear to dispute the ripeness of review regarding the Hall Road proposal. Lamar is challenging the same ordinance provisions in

---

[1] For example, Utica cites Citizens for Common Sense in Gov't. v. Att'y. Gen., 243 Mich. App. 43, 50 (Mich. Ct. App. 2000) (noting "courts have declined to act in contravention of administrative agencies where the remedies available through administrative channels have not been pursued to completion."). That case is inapposite because it did not involve a challenge to the constitutionality of a law on its face.

5

connection with both proposals.  For the foregoing reasons, this Court finds that Lamar's claims are properly before this Court.

### C. Lamar's Free Speech Claim

#### 1. Controlling Law

Lamar claims that Utica's zoning ordinance constitutes an invalid restriction of protected speech.[2]  The parties dispute which analytical framework this Court should apply: the "time, place and manner" analysis applicable to content-neutral restrictions on free speech, or the *Central Hudson* analysis which has developed in cases involving restraints on commercial speech.  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563-64 (1980).

"Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions."  *Clark,* 468 U.S. at 293.  The Supreme Court has noted "that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Id*.  In applying the "time, place, and manner" test, the Court has also recognized a requirement that any restriction must "substantially serve[]" the government's stated purpose for the restriction.  *See United States v. Grace*, 461 U.S. 171, 182 (1983).

The Supreme Court, in *Central Hudson*, applied a four-part analysis to the question of whether restrictions on commercial speech violate the First Amendment:

> In commercial speech cases, then, a four-part analysis has developed.  At the
> outset, we must determine whether the expression is protected by the First

---

[2]  To the extent Defendant argues that Plaintiff cannot demonstrate violations of the Equal Protection Clause, substantive due process, or procedural due process, such arguments are irrelevant to Plaintiff's claim.  Plaintiff only invokes the Fourteenth Amendment to apply the First Amendment to the states.  *See Gitlow v. New York*, 268 U.S. 652 (1925).

> Amendment.  For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.  Next, we ask whether the asserted governmental interest is substantial.  If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 563-64.

While the Supreme Court has never explicitly announced that content-bias is required in order for *Central Hudson* to apply, the Court has not applied the *Central Hudson* test to a regulation that did not regulate commercial speech clearly on its face.  In *Pagan*, the Sixth Circuit applied the *Central Hudson* analysis, rather than the time, place, and manner standard, because "the restriction on advertising does depend on the content of the speech: namely, the ordinance, as construed by [the city], draws a distinction between promotional speech and speech asserting belief or fact."  492 F.3d 766, 779 (6th Cir. 2007).  Unlike the restriction on advertising in *Pagan*, the applicability of the ordinance in this case is not determined by the content of the speech.  *See id*.

This Court concludes that the time, place, and manner analysis governs the case at hand. This Court also notes that application of the *Central Hudson* test to the ordinance would not likely affect the outcome of the analysis because the "framework for analyzing regulations of commercial speech [] is 'substantially similar' to the test for time, place, and manner restrictions."  *Bd. of Trs. v. Fox*, 492 U.S. 469, 477 (U.S. 1989).  Although the time, place, and manner test does not include a "directly advance" prong, the third step of the *Central Hudson* analysis, the Supreme Court has recognized a requirement that a restriction "substantially serve[]" a significant governmental purpose as noted above.  *See Grace*, 461 U.S. at 182.

### 2. Time, Place, and Manner Analysis

### i. Content Neutrality

7

The parties appear to be in agreement that the size, height, and location restrictions in the Utica zoning ordinance are content-neutral. "The restrictions have no censorial purpose, as they are both viewpoint- and content-neutral and regulate only the non-expressive components of billboards." *Prime Media Inc. v. City of Brentwood*, 398 F.3d 814, 818 (6th Cir. 2005). Even the ordinance's exemption for billboards installed on city-owned property makes no reference to the content of the speech regulated. The exemption merely gives the city the discretion to waive the size requirements on the basis of the billboard's location.

### ii. Significant Government Interest

Lamar implicitly disputes whether Utica has a significant interest in regulating the size and location of billboards. Lamar does not seem to argue that Utica's interests relating to public health, safety, and traffic are invalid on their face. Lamar argues instead that Utica's discretion to exempt signs on city-owned property undermines these interests. This Court is satisfied that the inquiry of whether exemptions undermine the stated interest in regulating speech is separate from the issue of the significance of the stated governmental interest. *See* Prime Media, 398 F.3d 814 at 818 (analyzing the significance of the defendant's interest in esthetics and traffic safety separate from the question of whether the provisions restricting speech were narrowly-tailored so as not to undermine those interests); *See also City of Laude v. Gilleo*, 512 U.S. 43, 54 (U.S. 1994) (considering the facial validity of the city's rationale for restricting speech separate from the question of whether the regulatory scheme's exemptions rendered it void under the third and fourth prongs of the time, place, and manner test). At this stage of the analysis, the Court need only consider the significance of Defendant's stated interest on its face.

There is no question that Utica's interests in the public health, safety, traffic, and esthetic character of the city are valid on their face: "Municipalities have a weighty, essentially esthetic

interest in proscribing intrusive and unpleasant formats for expression." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806 (U.S. 1984); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."). The stated governmental interests are sufficiently significant under this prong of the 'time, place, manner' analysis.

### iii. Narrowly Tailored

The parties dispute whether the zoning ordinance is narrowly tailored to serve the City's purported interests, particularly in light of the provision permitting the City to waive its size and height requirements for billboards on city-owned property. In *Ward v. Rock Against Racism*, the Supreme Court clarified "that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." 491 U.S. 781, 798 (U.S. 1989). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id*. at 800.

A number of courts have addressed whether regulations restricting signs and billboards satisfy the narrow tailoring requirement. In *Metromedia*, the Supreme Court considered whether a ban on offsite billboards, but not onsite billboards, was narrowly tailored to further the government's esthetic and traffic-related interests: "If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The

9

city has gone no further than necessary in seeking to meet its ends."[3]  *Metromedia*, 453 U.S. at

508.  The Court rejected an argument that because the ban forbade offsite billboards, but

permitted identical onsite billboards, the ban was not narrowly tailored to achieve its interest.

*See id.* at 511.

In *Prime Media*, the Sixth Circuit found that an ordinance regulating the height and size

of billboards within the city did not violate the First Amendment.  Applying the time, place and

manner test, the court concluded that "Brentwood's size and height restrictions satisfy the

tailoring requirements for a content-neutral regulation of the time, place and manner of speech,"

and that "the fit between the City's means and ends is a reasonable one."  398 F.3d at 821.

In the instant case, Plaintiff does not challenge the ordinance provisions regulating size

and height alone, but rather the size and height restrictions in conjunction with the Planning

Commission's ability to waive those same restrictions for identical signs on city-owned property.

"Exemptions from an otherwise legitimate regulation of a medium of speech may be noteworthy

for a reason quite apart from the risks of viewpoint and content discrimination: They may

diminish the credibility of the government's rationale for restricting speech in the first place."

*Gilleo*, 512 U.S. at 52.  Notwithstanding these concerns, the Supreme Court invalidated the city

ordinance under the fourth prong of the time, place and manner test because the regulation

"almost completely foreclosed a venerable means of communication that is both unique and

important," including political, religious, and personal communication.  *Id.* at 54.

In *City of Cincinnati v. Discovery Network*, the Supreme Court questioned the validity of

the city's esthetic-based reasons for categorically banning commercial newsracks: "The city has

asserted an interest in esthetics, but respondent publishers' newsracks are no greater an eyesore

---

[3]The ordinance in *Metromedia* defined onsite signs as those "designating the name of the owner or occupant of the premises upon which such signs are placed, or identifying such premises; or signs advertising goods manufactured or produced or services rendered on the premises upon which such signs are placed."  *Metromedia*, 453 U.S. at 493.

than the newsracks permitted to remain on Cincinnati's sidewalks. Each newsrack, whether containing 'newspapers' or 'commercial handbills,' is equally unattractive." 507 U.S. 410, 425 (U.S. 1993). The Court further noted that the majority of newsracks in the city were non-commercial and therefore not covered by the ban. *See id.* at 426. "Because the distinction that Cincinnati has drawn has absolutely no bearing on the interests it has asserted, we have no difficulty concluding . . . that the city has not established the 'fit' between its goals and its chosen means . . . ." *Id.* at 428.

In *Rubin v. Coors Brewing Co.*, the Supreme Court invalidated a federal statute that prohibited alcohol companies from printing alcoholic content on beer labels in order to prevent "strength wars" between competing companies. 514 U.S. 476 (1995). The statute contained numerous exemptions. For example, some of the restrictions applied only in some states. While the statute banned the disclosure of alcohol content on beer labels, it allowed such disclosures on wine labels and although brewers could not advertise alcohol content explicitly, they could still signal high alcohol levels by using terms such as "malt liquor." *Id.* at 488-89. Given these internal inconsistencies in the statute's regulatory framework, the Court held that it could "not survive First Amendment scrutiny because the Government's regulation of speech is not sufficiently tailored to its goal." *Id*. at 490; *see also Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (U.S. 1999) (finding the speech-infringing regulatory scheme at issue "so pierced by exemptions and inconsistencies that the Government cannot hope to exonerate it.")

A restriction on speech does not fail the narrowly-tailored standard simply because it restricts *some*, but not all, of such speech. In *Wheeler v. Kentucky*, the Sixth Circuit considered the constitutionality of a state law restricting the erection or maintenance of any "advertising

device" on private property.  822. F.2d 586, 587 (6th Cir. 1987).  The law contained an exception

for "devices erected or maintained on the property for the purpose of indicating the name and

address of the owner, lessee, or occupant of the property, the name or type of business or

profession conducted on such property," other information pertaining to the property itself, and

"devices providing directional information for businesses offering goods and services of interest

to the traveling public."  *Id.* at 587-88.  The court found that the restrictions on billboard

advertising were narrowly tailored to achieve Kentucky's interest in preserving the "natural

beauty of its interstate highways" and that "the exception for on-site messages and off-site

messages in areas zoned commercial or industrial . . . does not invalidate Kentucky's substantial

interest in []esthetics."  Id. at 595.  "Even if some visual blight remains, a partial, content-neutral

ban may nevertheless enhance the [state's] appearance."  *Id.*  (quoting *Taxpayers for Vincent*,

466 U.S. at 811).  The *Wheeler* court suggested that the undermining effect of the statutory

exceptions were merely "incremental."  822 F.2d at 595.

   In the case at bar, this Court cannot find that the City of Utica's ordinance regulating the

size, height and location of billboards, in light of its plenary power to waive these requirements

for billboards located on city-owned property, is narrowly tailored to further its concededly

significant interests.  While Utica's regulatory scheme for billboards is not as riddled with

exemptions as that in *Rubin*, it is also not clear that Utica's exemption will result in merely

"some" or "incremental" blight or traffic concerns.  Section 1507 of the Utica zoning ordinance

does not provide *any* guidelines for the Planning Commission to follow when deciding whether

to waive the size requirements for a particular site plan.  On its face, the exemption could

possibly lead to substantial, rather than incremental, blight.  The City of Utica does not suggest

that its esthetic and traffic concerns apply any less to city-owned property than to private

12

property.  The City of Utica argues that "[b]ecause the subject ordinance applies to a great deal

of property; i.e., the entire geographic area of the City of Utica, it is unlikely that the exemption,

applicable to city-owned property only, would cover a large enough area to 'undermine the

credibility of the government's explanation for restricting speech.'"  Def.'s Mot. for Summ. J. at

17 (quoting *Prime Media*, 398 F.3d at 822).  Utica offers nothing to substantiate this assertion.

This Court finds that there is no genuine issue of material fact as to whether the ordinance

is narrowly-tailored to achieve its otherwise valid regulatory interests and that Lamar is entitled

to relief as a matter of law.  Because the Court finds the zoning ordinance invalid under the third

time, place, and manner factor, the Court need not address whether the ordinance leaves ample

alternative channels of speech.

### D. Lamar's Prior Restraint Claim

Lamar alleges that certain provisions of Utica's zoning ordinance constitute an invalid

prior restraint on free speech.  The Supreme Court has long held that "in the area of free

expression a licensing statute placing unbridled discretion in the hands of a government official

or agency constitutes a prior restraint and may result in censorship."  *City of Lakewood v. Plain*

*Pub. Co.*, 486 U.S. 750, 757 (U.S. 1988).  "Only standards limiting the licensor's discretion will

eliminate this danger . . . ."  *Id*. at 758.  A licensing or regulatory scheme "subjecting the exercise

of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and

definite standards to guide the licensing authority, is unconstitutional."  *Shuttlesworth v.*

*Birmingham*, 394 U.S. 147, 150-51 (U.S. 1969).

In *City of Lakewood*, the Court considered a challenge to a licensing scheme's permit

requirement for all newsracks in the city.  The ordinance provided standards to guide the

Mayor's decision to issue a permit, including "terms and conditions deemed necessary and

reasonable by the Mayor," and required the mayor to make a statement that "it is not in the

public interest" when denying a permit application.  486 U.S. at 770.  The Court held that the

ordinance was invalid because it gave the mayor "unfettered discretion to deny a permit . . ."  *Id.*

at 772.  By contrast, the Sixth Circuit held in *H.D.V. - Greektown, LLC v. City of Detroit*, that the

zoning scheme for approving sign proposals did not vest "unbridled discretion" in the hands of

decision-makers.  The court noted that the ordinances in question contained "particular

requirements for signs, including limitation on size, height, location, area, and setback

conditions" and that these requirements constituted "narrow, objective, and definite

nondiscriminatory criteria."  568 F.3d 609, 623 (6th Cir. 2009).

In the case at bar, a genuine issue of material fact exists as to whether the zoning

ordinance grants unbridled discretion to the Planning Commission in deciding whether to

approve a site plan for a billboard.  Although the Planning Commission has discretion when

deciding whether to waive the size and location requirements for site plans on city-owned

property, the Planning Commission generally has restrictions.  Section 1507 provides that

billboards "not exceeding 250 square feet in area shall be permitted only on I and C-2 districts

provided such signs shall not be less than 100 feet from any residential district and provided that

at least 500 feet shall be provided between such signs."

Plaintiff Lamar relies on Ambrose's deposition testimony in which Ambrose stated that

"to [his] knowledge," the Planning Commission could have disregarded his recommendation to

deny Plaintiff's site proposal.  Even if it is true that the Planning Commission is not bound by

Ambrose's recommendations, there is no evidence in the text of the ordinance permitting the

Planning Commission to disregard the express size and location restrictions contained in Section

1507, or any other express terms and conditions of the ordinance.  Mayor Noonan testified in her

14

deposition that the Planning Commission could have approved Lamar's Hall Road site proposal only if it "met all the requirements of the ordinance without a need for a variance." Dep. of Jaqueline Kathleen Noonan at 23.

Whether the zoning ordinance contains sufficiently narrow and objective non-discriminatory criteria for considering billboard proposals remains a question of fact for the trier of fact. As there is a genuine issue of material fact, summary judgment on the issue of whether the ordinance constitutes an unconstitutional prior restraint on free speech is inappropriate. As discussed above, however, the zoning ordinance is not narrowly tailored to achieve Utica's significant interests and summary judgment in favor of Plaintiff is proper on that basis.

## IV. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [Docket No. 9, filed on May 18, 2010] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [Docket No. 11, filed on May 24, 2010] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Court finds in favor of Plaintiff and against Defendant.

IT IS DECLARED that Section 1507 of the City of Utica's Zoning Ordinance at issue in this case is unconstitutional.

s/Denise Page Hood_____
UNITED STATES DISTRICT JUDGE

DATED:  May 2, 2011

15